UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REBECCA JOHNSON,

    *Plaintiff,*

    *v.*

TANYA HUGHES and CHERYL SHARP,

    *Defendants.*

Civil No. 3:19cv508 (JBA)

February 24, 2023

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Tanya Hughes, Connecticut Commission on Human Rights and Opportunities ("CHRO") Executive Director, and Cheryl Sharp, CHRO Deputy Executive Director, sued in their official capacities[1], move for summary judgment on remaining Counts Three and Four of the Amended Complaint, which allege Title VII violations based on a failure to select Plaintiff Rebecca Johnson to interview for two regional manager positions based on racial discrimination and retaliation respectively. (Defs.' Mot. for Summ. J. [Doc. # 110] at 1.) Defendants submit that the record establishes that Plaintiff was not selected to interview for the positions because she lacked sufficient experience, rather than because of racial discrimination, and that neither Defendant could have retaliated against her because they lacked knowledge that Plaintiff applied for the regional manager positions or that she had

---

[1] Plaintiff sued Defendants Hughes and Sharp initially in both their official and individual capacities. Honorable Alfred V. Covello, to whom this case was initially assigned, granted Defendants' motion to dismiss Counts One and Two brought under Section 1983, but denied the motion to dismiss Counts Three and Four, both Title VII claims. [Doc. # 27] On a motion for reconsideration, Judge Covello partially granted the motion to dismiss Counts 3 and 4 against the Defendants in their individual capacities because Title VII liability does not extend to individuals, leaving only Counts 3 and 4 against Defendants in their official capacities remaining. (Ruling on Cross Motions for Reconsideration [Doc. # 37].)

engaged in protected activity. (*Id.* at 2.) Plaintiff responds that the record demonstrates that she was qualified for the position, and that the only reason Defendants could have had not to hire her was either racial discrimination or retaliation. (Pl.'s Opp'n to Summ. J. [Doc. #114].)

I.      **Factual Background**

        A.      **Plaintiff's Relationship with CHRO**

        Plaintiff Rebecca Johnson is an African American woman who was employed at the CHRO from 2004 to 2008 as an HRO Representative. (Pl.'s Aff. [Doc. # 113-1] ¶ 2.) During that time, Plaintiff alleges that she and several other women were subjected to "verbal abuse and humiliation" by the prior director of the CHRO Hamisi Ingram "on the basis of gender," ultimately causing Plaintiff's suspension. (*Id.* ¶ 4) The disciplinary action was followed by a series of actions "resulting from union intervention including a widely publicized hearing before the Connecticut legislature's Committee on Labor and Public Employees in May of 2006." (*Id.* ¶ 5.) In 2007, Plaintiff filed a federal court complaint for harassment, discrimination, and retaliation against CHRO and Ingram, which resulted in a settlement favorable to her with both CHRO and Ingram. (*Id.* ¶ 6) Plaintiff asserts that Defendant Hughes was aware of this lawsuit because they had had conversations about it in which Hughes "asked me how I was holding up because I remained employed while the lawsuit was pending." (*Id.* ¶ 7.) Plaintiff further asserts that because the nature of the lawsuit was so publicized, "everyone in the agency knew about the suit." (*Id.* ¶ 8.) Defendants both claim they were unaware before the current lawsuit was brought that Plaintiff engaged in any protected activity. (Hughes Aff. ¶ 25; Sharp Aff. ¶ 30.)

        Plaintiff left CHRO in 2008 to take a management role at Central Connecticut State University. (*Id.* ¶ 9) Ten years later, she applied in May and June of 2018 for the position of

Regional Manager in two different CHRO regional offices; she was not invited to interview for either position. (*Id.* ¶ 10.)

### B.   Defendants' Roles in Hiring

Defendant Tanya Hughes is an African American woman who has been the CHRO Executive Director for nine years; Defendant Cheryl Sharp is an African American woman who has been CHRO Deputy Executive Director since July 4, 2014. (Defs.' Loc. R. 56(a) Stmt. ¶¶ 1-2.) A response to Plaintiff's FOIA request to the Connecticut Department of Labor lists both Hughes and Sharp as persons "who were involved in screening any portion of the applications submitted by the applicants for either of the Regional Manager vacancies," and as persons "who were involved in deciding which applicants would be invited to interview for the Regional Manager vacancies." (September 18, 2018 Connecticut DOL FOIA Response [Doc. # 113-5] at 1-3.) According to Hughes' affidavit, however, she did not participate in reviewing the applications to determine if they met the minimum criteria for interview consideration or determining which candidates would be interviewed or in interviewing the candidates, and did not review Plaintiff's applications, but did review and approve the final selections. (Hughes Aff. [Doc. # 110-4] ¶¶ 16-21.) Sharp asserts that she participated in the application review process by completing the checklist review described in step 7 of the hiring process for some candidates, but not for Plaintiff's applications; she also participated in candidate interviews, scored candidates, and participated in the selection memo sent to Defendant Hughes for her approval. (Sharp Aff. [Doc. 110-5] ¶¶ 16-24.)

## II.   Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3

matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

## III.   Discussion

The Court finds itself in the position of resolving this case on a point of law not raised by either party in their summary judgment briefing[2], but which poses a bar to Plaintiff's claims as a matter of law. The only two counts remaining are brought against Defendants in their official capacities; CHRO has never been named as a defendant in this action. However, a "plaintiff may not assert a Title VII claim against [an individual defendant] in her individual *or* official capacity" because a Title VII claim "[is] against [plaintiff's] employer, not against an individual supervisor." *McBride v. Routh*, 51 F. Supp. 2d 153, 157 (D. Conn. 1999) (emphasis added). *McBride* based its decision on the Second Circuit's decision in *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995) holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII" because to hold otherwise would ignore Title VII's limit of liability to "employer-entities" with 15 or

---

[2] The Court informed the parties by email prior to oral argument that they should be prepared to discuss whether individual defendants sued in their official capacities could be held liable under Title VII.

more employees. *Id.* at 156. The Second Circuit has not definitively resolved the question. *See Hafez v. Avis Rent A Car Sys., Inc.,* 242 F.3d 365 (2d Cir. 2000) ("Although this court has not yet determined whether Title VII allows suit against individual employees in their official capacities, district courts in this Circuit have recently tended to reject Title VII official capacity actions. . . . We need not decide whether Title VII encompasses a claim against an individual employee in his official capacity because an alternative ground exists to support the district court's denial of leave to amend.") However, other courts in this circuit have adopted *McBride*'s reasoning in holding that Title VII claims cannot be brought against individual defendants even in their official capacity. *See, e.g.*, *Hampton v. Branch,* No. 3:18-CV-1445 (VAB), 2020 WL 3129264, at *6 (D. Conn. June 13, 2020); *Riccobono v. Crew*, No. 00CV5386SLTMDG, 2010 WL 11602749, at *3 (E.D.N.Y. Sept. 10, 2010).

At oral argument, the parties' counsel both agreed that their understanding of the law is consistent with the above, and Plaintiff's counsel offered no rebuttal for the proposition that neither Defendant Hughes or Sharp can be held individually liable in any capacity under Title VII.[3] Defendants are thus entitled to judgment as a matter of law, and the Court does not reach the merits of Defendants' motion for summary judgment. While Plaintiff indicated at oral argument that she may seek leave to amend the complaint to add the CHRO as a party, the Court can consider such a motion only if and when it is filed and properly before it.

## IV.   Conclusion

Summary judgment is GRANTED on Counts 3 and 4, and the Clerk is requested to close the case.

---

[3] However, Plaintiff argued at oral argument that Defendant Hughes is, in effect, a stand-in for CHRO as the Executive Director. The Court rejects this position as contrary to *McBride's* distinction between naming individual defendants and employer-entity defendants for purposes of Title VII.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of February, 2023